## FIRST DEPARTMENT, DECEMBER, 1926.

DELIA CUSACK, Respondent, *v.* NATHAN OTTINGER and Others, as Executors, etc., of MOSES OTTINGER, Deceased, Appellants.

*Master and servant — action against master to recover for assault by servant — jury found that servant was of vicious nature to knowledge of defendant — judgment for plaintiff affirmed if plaintiff stipulates to reduction.*

Appeal from a judgment of the Supreme Court in favor of the plaintiff, entered in the New York county clerk's office on December 10, 1925, upon the verdict of a jury for $25,000.

Judgment reversed and a new trial ordered, with costs to the appellants to abide the event, unless the plaintiff stipulates to reduce the judgment as entered to the sum of $15,239.17; in which event the judgment as so modified is affirmed, without costs. No opinion. Settle order on notice. Present — Clarke, P. J., Merrell, Finch, Martin and Burr, JJ.; Clarke, P. J., and Martin, J., dissent and vote for reversal.

CLARKE, P. J. (dissenting). I dissent from the affirmance of this judgment as modified. The action was brought by the plaintiff to recover damages alleged to have been caused solely through the fault and negligence of the defendants in employing and maintaining one Thomas Gallagher as their agent and employee in charge of the premises in the capacity of superintendent or janitor, having knowledge and notice on their part that the said Gallagher was of a dangerous, troublesome and vicious nature and also at the time said assault herein was committed said Gallagher was acting within the scope of his employment and instructions given him by the defendants. The learned court at Trial Term submitted specific questions to the jury. The fifth question was: " Was Tom Gallagher in committing such assault acting within the scope of his employment? " To which the jury answered: " Yes." The court set aside the answer to said question as contrary to the evidence and contrary to the weight thereof. In this he was entirely justified, for this brutal and unjustifiable assault, which very seriously injured the plaintiff, was not and could not have been, under the circumstances disclosed, committed within the actual or apparent scope of Gallagher's employment. As stated in *Muller* v. *Hillenbrand* (227 N. Y. 448, 451): " The janitor, in assaulting the infant plaintiff, was not acting within the actual or apparent scope of his employment. Had the defendant been present he would have had no authority to do what the janitor did and what he could not legally do he could not, in a legal sense, authorize the janitor to do for him. (*Poulton* v. *L. & S. W. Ry. Co.*, 1867, L. R. 2 Q. B. 534; Pollock on Law of Torts [10th ed.], 97, 98.) The rule of liability of a master for the acts of his servant is tersely stated in *Mott* v. *Consumers' Ice Co.* (73 N. Y. 543, 547). It is that ' For the acts of the servant within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly, or even willfully. * * * But if a servant goes outside of his employment, and without regard to his service, acting maliciously, or in order to effect some purpose of his own, wantonly commits a trespass, or causes

damage to another, the master is not responsible.' To the same effect is *Girvin* v. *N. Y. C. & H. R. R. R. Co.* (166 N. Y. 289)." The first question submitted to the jury is: "Was Tom Gallagher in the employ of the defendant Ottinger on September 19th, 1921?" To which the jury answered: "Yes." I am of the opinion that that finding was against the evidence and against the weight thereof. While it was conceded that for several years he had been employed as a fireman of the furnaces and boilers supplying heat to the apartment houses owned by the defendants, during a portion of each year, from the middle of October until May, the evidence as I read it, is quite conclusive that on the twenty-first of September of the year in question, the date of the assault, he was not and had not been employed since the fifth of May except for one day in July, either the twenty-seventh or twenty-eighth, when he cleared out some material from the basement of one of the houses. The second question asked of the jury is: "Was Tom Gallagher of a dangerous, troublesome and vicious nature on September 19th, 1921?" The third question was: "Did the defendant Ottinger know or have reasonable ground to believe on September 19th, 1921, that Tom Gallagher was of a dangerous and vicious and troublesome nature?" The jury answered both of these questions in the affirmative. In my opinion both of those findings were against the evidence and the weight thereof, in so far as they imply a general condition of viciousness. Of course the attack made upon the plaintiff, striking her down with an iron bar, was a brutal and vicious act in and of itself and without excuse or justification, but I am of the opinion that the evidence does not warrant the conclusion of general viciousness and knowledge thereof, brought home to the defendant, as was the case in *Hall* v. *Smathers* (240 N. Y. 486), upon which the respondent mainly depends. For these reasons I vote to reverse. Martin, J., concurs.